CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 18 2015

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES G. SURFACE, ) | |
| ) | Civil Action No. 7:14CV00528 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | Hon. Glen E. Conrad |
| BOILERMAKER BLACKSMITH ) | Chief United States District Judge |
| NATIONAL PENSION TRUST, ) | |
| ) | |
| Defendant. ) | |

In this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § et seq., Charles G. Surface seeks to recover pension benefits from the Boilermaker-Blacksmith National Pension Trust (the "Trust"). Surface claims that the Trust improperly denied his claim for pension benefits and breached its fiduciary duties. The case is presently before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, both motions will be denied without prejudice and the case will be remanded to the Trust for a full and fair review of Surface's claim for pension benefits.

## Background

Surface began his career as an industrial welder in 1972, when he joined a local unit of the Plumbers & Pipefitters Union. Surface primarily worked on Plumbers & Pipefitters worksites, and he has received pension benefits from contributions that were made to that union's pension plan.

To supplement the work that he performed as a member of the Plumbers & Pipefitters Union, Surface occasionally undertook welding work that was typically available only to members of the Boilermaker-Blacksmith Union ("Boilermakers"). When Surface worked on Boilermakers projects, a portion of each paycheck was contributed to the Trust. His contributions between 1979 and 2004 totaled $7,892.34.

In 2012, Surface requested information from the Trust about the status of his pension benefits. By letter dated September 25, 2012, the Trust advised Surface that he did not qualify for any pension benefits, because he incurred "break[s]" in "covered employment," which caused him to "forfeit previous hours and contributions." BNF 00040.[1]

Surface claims that this letter was the first instance in which he was ever given notice that breaks in covered employment would cause him to forfeit his pension benefits. According to Surface, the Trust never provided him with copies of pension plan documents, summary plan descriptions, or any other notifications that would have informed him of the consequences of a break in covered employment.

Upon receiving this initial communication, Surface retained counsel, who reiterated his demand for pension benefits in a November 19, 2013 letter to the Trust. In a response letter dated November 26, 2013, Beth Racki, a pension supervisor, acknowledged receipt of Surface's demand letter. Racki reported that "every Participant is sent a Summary Plan Description when contributions commence on their behalf," and that "every Participant that has hours and contributions submitted on their behalf, regardless of whether or not they are eligible for a benefit, are all sent subsequent Summary Plan Descriptions and notices regarding Pension Plan changes as long as [the Trust has] a valid address on file." Id. at 0034. Racki further noted that "the same address has been on file since 1993 and no return mail has ever been received." Id.

Surface's counsel responded by letter dated January 29, 2014. In the letter, counsel indicated that he had conferred again with Surface, and that Surface had informed counsel that he never received any summary plan description or other plan documents informing him of the consequences a

---

[1] The court's citation to "BNF" refers to the pagination used in the administrative record.

2

break in service would have on his ability to obtain pension benefits. Counsel also noted that even if the Trust had maintained the same address for Surface since 1993, there was no indication that Surface had received any information from the Trust between 1979 and 1992.

In a reply letter dated February 13, 2014, Racki responded to Surface's request for proof that a summary plan description had been sent to Surface. Racki indicated that "at this time, the only proof we are able to provide is a screen shot from our computer system showing a code in the field that is coded when an SPD is sent to a participant. The code in that field, 'P,' indicates that Surface was sent an SPD." Id. at 21. Racki also indicated that the Trust did not have any computer records of Surface's address prior to 1993, and that an "address history was not saved in [the Trust's] computer system prior to that date." Id. Racki noted that Surface's appeal would be heard by the Pension Appeals Committee, and advised him that he could submit additional information for the committee's consideration.

On May 30, 2014, Surface submitted a sworn declaration in support of his appeal. In the declaration, Surface stated that he never received any pension plan documents or other notices informing him that breaks in covered employment could cause him to forfeit his pension benefits, or otherwise advising him of the consequences of a break in service. Surface also indicated that the address that the Trust claimed to have had on file for him since 1993 was a family member's address, and that he had never received any plan documents at the address at which he had actually lived since 1993, or at any point before that.

Surface's appeal was heard on June 10, 2014. The administrative record includes a memorandum summarizing the appeal. The memorandum states, in pertinent part, as follows:

**ISSUE:**
Should the Permanent Break in Covered Employment rules be applied when determining the Participant's eligibility for a benefit?

3

**REASON FOR APPEAL:**
The Participant suffered Permanent Breaks in Covered Employment on September 30, 1983; September 30, 1990; September 30, 1996; and September 30, 2004 forfeiting all hours and contributions submitted on his behalf.

**APPEAL:**
The Participant's attorney states that the Participant was a member of the Plumbers and Pipefitters Union, and only worked in the boilermaker trade intermittently. He states the Participant was never provided any oral or written notice that breaks in covered employment could cause him to forfeit benefits, and he was also informed that the Pension Trust would safeguard his contributions and provide those funds along with the accrued benefits when he retired. The attorney claims that the Pension Trust must issue benefits to the Participant because he was not informed of the rules governing breaks in covered employment.

Id. at 7.

By letter dated June 11, 2014, the Trust informed Surface's counsel that the appeal had been denied, based on Section 3.05 of the pension plan, governing breaks in covered employment. The Trust indicated that the "specific reason [the] appeal was denied is because Mr. Surface has not fulfilled the vesting requirements in order to be entitled to a pension benefit." Id. at 2. The letter advised Surface of his right to appeal the denial of benefits under Section 502(a) of ERISA within two years of the date a determination was made by the Trust. The letter did not address Surface's argument that he never received notice of the plan's provisions governing breaks in covered employment.

Surface filed the instant action on September 24, 2014. In his complaint, Surface asserts a claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and a claim for breach of fiduciary duties under Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

The parties subsequently filed cross-motions for summary judgment, which were heard on May 27, 2015. The matter is now ripe for review.

4

## Discussion

### I.  Claim for wrongful denial of benefits

In Count I of his complaint, Surface seeks review of the denial of his claim for pension benefits, pursuant to Section 502(a)(1)(b) of ERISA. This section authorizes a plan participant to bring a "civil action . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[2]

The scope of a district court's review in an action challenging the denial of benefits under § 1132(a)(1)(B) generally turns on whether the benefit plan at issue vests the plan administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013). "[W]hen 'an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion.'" Helton, 709 F.3d at 351 (quoting Williams v. Metro. Life Ins. Co., 609 F.3d 6622, 629 (4th Cir. 2010)). If a plan does not give the plan administrator such discretionary authority, the administrator's decision is reviewed de novo. Id. Under either standard of review, however, -- abuse of discretion or de novo -- the administrator must comply with the procedural guidelines set forth in ERISA and its implementing

---

[2] Before bringing an action for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B), an ERISA claimant must exhaust the administrative remedies provided by the employee benefit plan. Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005); see also Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989) (exhaustion of administrative remedies is "a prerequisite to an ERISA action for denial of benefits"). "Exhaustion . . . 'enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999) (quoting Makar, 872 F.2d at 83). In this case, it is undisputed that Surface exhausted his administrative remedies before filing suit under § 1132(a)(1)(B).

5

regulations. Hall v. Metro. Life Ins. Co., 259 F. App'x 589, 593 (4th Cir. 2007) (citing Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 158 & n.3 (4th Cir. 1993)).

As relevant here, "ERISA requires that every employee benefit plan 'provide adequate notice in writing to any participant whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial.'" Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 235 (4th Cir. 2008) (citing 29 U.S.C. § 1133). The plan must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. 1133. The regulations implementing these provisions specify the claims procedures necessary to meet the statutory requirements for a "full and fair review," including, but not limited to, "a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv).

As the United States Court of Appeals for the Fourth Circuit explained in Gagliano,

> [t]he purpose of the ERISA mandated appeal process is an important one. That process enables a claimant who is denied benefits to have an impartial administrative review, but also make an administrative record for a court review if that later occurs. Without this opportunity to make a meaningful administrative record, courts could not properly perform the task of reviewing such claims, a specific function entrusted to the courts by ERISA. Moreover, plan participants would be denied their statutory rights. Procedural guidelines are at the foundation of ERISA and full and fair review must be construed . . . to protect a plan participant from arbitrary or unprincipled decision-making.

Gagliano, 547 F.3d at 235 (internal citation and quotation marks omitted).

In the instant case, the administrative record provides no indication that the Trust's review of Surface's claim for pension benefits took into account "all comments, documents, records, and other information submitted by the claimant relating to the claim," as required by 29 C.F.R. §

6

2560.503-1(h)(2)(iv). When Surface appealed the denial of benefits to the Pension Appeals Committee, he specifically argued that he never received any summary plan description or any other plan documents informing him of the pension plan's rules regarding breaks in covered employment, and he submitted a sworn declaration to that effect. Although the memorandum summarizing Surface's appeal for the Pension Appeals Committee clearly lists the notice argument as the primary basis for the appeal, the final denial letter makes no reference to this argument or to Surface's sworn declaration. Thus, even if the argument was actually considered in rendering the appeal decision, the Trust failed to provide adequate notice of the reasons for which the argument was rejected, as required by 29 U.S.C. § 1131. Consequently, the court is unable to properly perform its task of reviewing the Trust's decision.

In cases such as this, where there is a procedural ERISA violation, the Fourth Circuit has recognized that "the appropriate remedy is to remand the matter to the plan administrator so that a 'full and fair review' can be accomplished." Gagliano, 547 F.3d at 240. This position is consistent with the rule of other circuits and the Fourth Circuit's observation in Sedlack v. Braswell Services Group, Inc., 134 F.3d 219, 225 (4th Cir. 1998) that procedural violations of ERISA generally do not give rise to a substantive remedy. See Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 157 (5th Cir. 2009) (collecting cases); see also Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan, 581 F.3d 355, 373 (6th Cir. 2009) (noting that remand is appropriate where the plan administrator's decision suffers from procedural irregularities, such as "where the plan administrator merely 'fail[ed] . . . to explain adequately the grounds of [its] decision'") (quoting Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1288 (10th Cir. 2002)).

In the absence of any circumstances that might support an exception to this general rule, the court concludes that the proper remedy is to remand Surface's claim for pension benefits to the Trust,

so that he receives the "full and fair review" to which he is entitled under ERISA, and has the opportunity to make a meaningful administrative record. On remand, the Trust shall consider the extent to which it was required to provide notice of the pension plan's break-in-service and vesting requirements; whether Surface did, in fact, receive notice of these requirements; and, if Surface did not receive notice, whether the Trust should award pension benefits or return his contributions to remedy the administrative error. See, e.g., Helton, 709 F.3d at 357-59 (concluding that the defendant abused its discretion in denying the plaintiff's request to recoup lost pension benefits, where the defendant's decision that the plaintiff received adequate notice of a change to her pension plan was not supported by substantial evidence, and the plan gave the administrator broad authority to remedy past errors, such as the failure to adequately inform a beneficiary of a material plan change).

## II. Claim for breach of fiduciary duties

Surface also claims that the Trust breached its fiduciary duties under ERISA by failing to provide him with plan documents during the time period in which he was working on Boilermakers worksites and contributing to the Trust. Surface seeks equitable relief, in the form of restitution, under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

On remand, as set forth above, the Trust will consider whether Surface's pension contributions should be returned to him. If the contributions are returned, such relief would make Surface whole and render moot his request for equitable relief. See Helton, 709 F.3d at 351 n.2 (declining to consider whether the district court properly found for the plaintiff on her breach of fiduciary duty claim, since the district court's award of lost pension benefits made the plaintiff whole). As a result, the court finds it appropriate to hold this claim in abeyance pending the conclusion of the remand proceedings.

8

## Conclusion

For the reasons stated, the parties' cross-motions for summary judgment will be denied without prejudice to renewal, and the case will be remanded to the Trust for further proceedings consistent with this opinion.

The Clerk is directed to close this case during remand, subject to reopening, if the plaintiff is denied pension benefits and again seeks redress in this court. The Clerk is further directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 18th day of September, 2015.

/s/ Glen Conrad
Chief United States District Judge